```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION

Charles R. Ogle, et al.,       :

        Plaintiffs,             :

     v.                         :      Case No. 2:10-cv-1059

Columbia Gas Transmission,      :      JUDGE PETER C. ECONOMUS
LLC, fka Columbia Gas                  Magistrate Judge Kemp
Transmission Corp., et al.,     :

        Defendants.              :
```

## OPINION AND ORDER

### I. Background

This case involves, as the Court of Appeals has put it, Plaintiffs Charles and Melanie Ogle's claim for "damages and injunctive relief relating to the expansion of natural-gas facilities on their land ...." See Ogle v. Columbia Gas Transmission Co., LLC, Case No. 11-4155 (6th Cir. January 31, 2013), slip op. at 2. More particularly, Columbia Gas Transmission asked, in 2008, for permission from the Federal Energy Regulatory Commission to place a second storage well and an access road on the Ogles' property. Permission was granted, and the Court has dismissed all of the Ogles' claims for injunctive relief, so the remaining issue in the case is damages. Those damages are limited to the effect that Columbia's actions had on the property prior to November 5, 2009, when the property was transferred to Ogleshill Farm, LLC. See Opinion and Order of August 9, 2013 (dismissing all other claims for lack of standing) (Doc. 84). Specifically, these damages are limited to construction, crop, and diminution damages, criminal trespass and theft damages, and well rental payment and pipeline payment required in advance of construction. See Order of October 10, 2013 (Doc. 93). The following claims set forth in the Ogles' second amended complaint (Doc. 85) were specifically dismissed by

the Court: a claim for damage which occurred in 2012 (¶41); various claims labeled "False, Fictitious, Perjured and Fraudulent Documents" (¶¶42-49); various claims labeled "Surface Owner Rights and Good Faith and Fair Dealing" (¶¶55-59); and various claims labeled "Civil Rights Violations and Conspiracy and Complicity to Commit Civil Rights Violations, False Report, Perjury, Libel, Slander, Abduction and Conspiracy and Complicity to Commit False Report, Perjury, Libel, Slander and Abduction" (¶¶60-64).  See Order of December 12, 2013 (Doc. 98).

## II.  Pending Motions

Currently before the Court are the Ogles' motion to compel and a corresponding motion for a protective order filed by defendants Columbia Gas Transmission, Fredric George, and Beth Minear.

In their motion to compel, the Ogles contend that Jason Martin and Columbia Gas Transmission have failed to respond to interrogatories, produce documents or answer deposition questions which the Ogles believe could lead to admissible evidence relating to damages for criminal trespass and theft.  The extent of their argument, unaccompanied by evidentiary support, is set forth in one paragraph which states:

> Defendants have intentionally caused delay of the discovery process to the prejudice of Plaintiffs by refusing to divulge to the Columbia Gas Transmission, LLC employees who instructed Jason Martin to take actions that prove part of the criminal trespass and theft committed upon Plaintiffs' property.  Defendants' attorney, James Doerfler, has also interfered with Plaintiffs' rights by advising his clients not to answer questions related to the criminal trespass and theft upon Plaintiffs' property.

The Ogles also argue that Columbia has refused to produce defendants Beth Minear and Fredric George for deposition.  They contend that these defendants are not exempt from the discovery process simply because they are employed as in-house counsel by

Columbia.

In response, these defendants filed a motion for a protective order relating to the proposed depositions of Ms. Minear and Mr. George.  As they explain, these defendants are both in-house counsel and the allegations against them are limited.  According to defendants, the Ogles allege that these defendants were complicit in criminally trespassing on the Ogles' property in connection with well installation activities and that these defendants submitted false and fraudulent filing with regulatory agencies.  Defendants cite to the Court's previous orders dismissing any fraudulent filing claims and argue that, notwithstanding these orders, the deposition notices directed to Mr. George and Ms. Minear contain ten topics, most of which relate to regulatory filing issues.  They contend that the remaining deposition topics have either been addressed previously in the deposition testimony of non-attorney witnesses or involve the Ogles' attempt to make inquiries about construction activities on the properties of hundreds of other landowners.  Given the attorney-client privilege implications, defendants assert that they have asked for an explanation of the need to depose in-house counsel, but the Ogles have declined to provide one.

The deposition notice attached to the motion for a protective order as Exhibit B indicates that the proposed topics for Mr. George's deposition include:

> 1. Knowledge of the intended and actual construction activities and/or damages on Plaintiffs' property as specified in Plaintiffs' amended complaint;
>
> 2. Communications with other defendants and/or other persons or agencies, including the Federal Energy Regulatory Commission, regarding the intended and actual construction activities and/or construction damages on Plaintiffs' property during the time specified in Plaintiffs' amended complaint;

> 3. Knowledge regarding Plaintiffs' wood products as referenced in Plaintiffs' amended complaint;
>
> 4. Knowlege pertaining to any documents regarding Plaintiffs' property submitted by Fredric J. George to the Federal Energy Regulatory Commission and/or any other agency;
>
> 5. Knowledge of the intended and actual construction activities and/or damages on each and all other properties in FERC docket CP08-431;
>
> 6. Communications with other defendants and/or other persons or agencies, including the Federal Energy Regulatory Commission, regarding the intended and actual construction activities and/or damages on each and all other properties in FERC docket CP08-431;
>
> 7. Knowledge regarding wood products on each and all other properties in FERC docket CP08-431;
>
> 8. Knowledge pertaining to any documents regarding each and all other properties in FERC docket CP08-431 submitted by Fredric J. George to the Federal Energy Regulatory Commission and/or any other agency;
>
> 9. Communications with any other defendant and/or person or agency regarding security on Plaintiff's property;
>
> 10. Communications with any other defendant and/or person or agency regarding security on each and all other properties in FERC docket CP08-431.

The proposed deposition topics for Ms. Minear are identical with the exception of topic 4. In Ms. Minear's deposition notice, attached to the motion as Exhibit C, topic 4 is not limited to submissions by Mr. George but encompasses submissions by any defendant.

    The defendants rely on the three-part test set out in <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323 (8th Cir. 1986), and adopted by the Sixth Circuit Court of Appeals, in support of their position that a protective order prohibiting the

depositions of Ms. Minear and Mr. George is required here. According to defendants, because Shelton applies, the Ogles must demonstrate that they have no other means of obtaining the desired information and the information sought is relevant, non-privileged, and crucial to their preparation of their case. Defendants contend that the Ogles have not met their burden on any of these issues.

Alternatively, defendants request that the Court enter an interim protective order and require the Ogles to complete depositions of other, non-attorney defendants and the corporate representative.  If, after the completion of these depositions, the Ogles remain unsatisfied, defendants ask that the Ogles be required to seek leave of Court to issue deposition notices specifying "(1) the relevant information that is uniquely in possession of the proposed attorney deponents; (2) why that information is necessary to Plaintiffs' affirmative case; and (3) describing how that questioning can be pursued without revealing attorney-client privileged information or protected litigation strategies."  According to defendants, the depositions of Mr. George and Ms. Minear will not elicit information relevant to any remaining claims or damages but would certainly result in "annoyance, embarrassment, oppression, or undue burden or expense" of the type generally sought to be prevented by Fed.R.Civ.P. 26.  Defendants argue that the primary risk associated with the proposed depositions is that the questioning may infringe on attorney-client communications or reveal litigation strategies.  Because FERC filings are not at issue here, they assert that Mr. George has no relevant information to offer but his deposition may result in the disclosure of privileged information or mental strategies.  They argue that the risk is even greater with respect to Ms. Minear in light of her involvement in extensive state court litigation adverse to the

Ogles, much of which involved substantive issues relating to the interpretation of the lease at issue in this case.  They state, without elaboration, that state court litigation over lease interpretation issues, remains ongoing.

The Ogles have not filed a response to the motion for a protective order.

In addition to the motion for a protective order, defendants filed a response to the motion to compel.  In the response, defendants assert that the Ogles have been afforded a complete opportunity to obtain relevant evidence in support of their claims of theft and criminal trespass.  Specifically, they explain that the Ogles have been able to depose Jason Martin and Keith Hedges, two individuals who oversaw the construction work on the Ogles' property on behalf of Columbia.  According to defendants, during their depositions Mr. Hedges and Mr. Martin answered questions regarding the physical construction activities on site, including how the construction work was performed, who performed it, and how the remediation of the property was performed.  Additionally, defendants state that the Ogles took the depositions of Rebekah Hovermale and Scott Burnsworth, two Columbia environmental specialists.  Defendants explain that the Ogles were able to question these witnesses regarding any environmental conditions relating to construction activities on their property and FERC filings.

Defendants also note that, because the Ogles have not provided a copy of Mr. Martin's deposition transcript or otherwise explained what information relating to claims of trespass or theft they still need to explore, Columbia has fulfilled its discovery obligations.  By way of explanation, they state that Mr. Martin's deposition testimony was restricted only with respect to a line of inquiry directed to a driveway application made to a state regulatory agency and to FERC

-6-

filings.  The remainder of the response primarily incorporates by reference the arguments raised in its motion for a protective order.

## III.  Analysis

Turning first to the issue relating to Mr. Martin, defendants are correct that the Ogles have failed to identify with any specificity an interrogatory, document production request, or line of deposition questioning addressed to information the Ogles maintain they have been unable to obtain. Further, the Ogles did not respond in any way to the defendants' representations so the Court has no record from which to conclude that any discovery from Mr. Martin remains outstanding. Consequently, the motion to compel will be denied as moot as it relates to Mr. Martin.

Turning to the issue of the depositions, Mr. George and Ms. Minear are parties, they have not been deposed, and their depositions were properly noticed pursuant to Fed.R.Civ.P. 30(b). These facts are not in dispute.  In this situation, the general rule to be applied is that "[u]nder the liberal discovery principles of the Federal Rules" a party is "required to carry a heavy burden" to show why a properly-noticed deposition should not go forward.  See Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).  The Court recently addressed the issue of a party's burden in this circumstance in Libertarian Party of Ohio v. Husted, –– F.R.D. –, 2014 WL 3456835, *3 (S.D. Ohio July 11, 2014):

> Although difficult to do, a party may meet that burden in a number of different ways.  For example, the party may prove that he or she has already been deposed in the case or that the deposition would exceed the ten-deposition limit.  See Fed.R.Civ.P. 30(a)(2).  The party might also show that the deposition has been noticed too early (before the Rule 26(f) conference) or too late (after the discovery cutoff date); or that he or she falls into a category of witnesses, like heads

of agencies, CEOs of large corporations, or the opposing party's attorney, who are easy targets for harassment, and for whom the burden of showing the appropriateness of the deposition may shift to the requesting party. See, e.g., Salter v. Upjohn Co., 593 F.2d 649 (5th Cir. 1979); see also Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987).

It is also possible, but much more difficult, to obtain an order precluding a party's deposition from taking place on grounds that the party has no relevant knowledge, or that, despite the fact that the party has not been deposed even once, the deposition would be "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(I), (iii). However, granting such orders absent a specific and persuasive showing of good cause would cut against the fact that, under Rule 30(a), "[a] party may ... depose any person, including a party, without leave of court...." The fact that depositions "relate to [a party's] trial preparation and defense .... [which] are important interests, and great care must be taken to avoid their unnecessary infringement," Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985), explains why the courts impose a heavy burden on the movant in these circumstances. As the court in EEOC v. Freeman, 2012 WL 2370122, *1 (D. Md. June 21, 2012) aptly observed,

> In general, motions for protective orders "seeking to prevent the taking of a deposition [are] regarded unfavorably by the courts." Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 125 (D. Md. 2009). Such orders "should be rarely granted absent extraordinary circumstances;" therefore, the moving party bears a "heavy burden." Id. (quoting Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001)) (internal quotation marks omitted).

The defendants' motion to preclude the depositions of Mr. George and Ms. Minear, despite the fact that they are parties to this

-8-

case, must be judged under these principles.

### A. Necessity for a Shelton Analysis

Defendants' primary argument is that <u>Shelton</u> applies here, placing the burden on the Ogles to prove the necessity of the depositions.  In recognition of the fact that Mr. George and Ms. Minear are also named as defendants here, defendants assert that "when an attorney is named as a party to the action, that attorney may only be deposed under limited circumstances."  They contend that this Court has previously prohibited the depositions of other attorneys named as defendants and cites as support to <u>United States v. Thirty-six (36) 300CC On Road Scooters</u>, 2013 WL 5487297 (Sept. 30, 2013)(Abel, J.), <u>adopted and affirmed</u> 2013 WL 6710893 (Dec. 18, 2013)(Sargus, J.).  Beyond this particular case, they cite no authority to support the suggestion that a <u>Shelton</u> analysis is generally undertaken to determine the appropriateness of a deposition of a party who also happens to be in-house counsel.

Initially, the Court notes that the defendants are correct that this Court has applied the <u>Shelton</u> rule to preclude the deposition of in-house counsel under various circumstances. Further, they are correct that, under the <u>Shelton</u> rule, the burden shifts to the party seeking to take the deposition of in-house counsel to demonstrate that the deposition is necessary. However, the Court is not persuaded that <u>Shelton</u> is intended to be read so expansively as to apply to the situation presented here.

Notably, the defendants have provided no authority suggesting such an automatic application of <u>Shelton</u>.  To the extent that they rely on the <u>Road Scooters</u> case as support for their reading of <u>Shelton</u>, the Court notes that in that particular case, the counsel at issue was not a named party, although he had been named as a defendant in related litigation.  Further, the

-9-

Court in that case did not rely on Shelton as a basis for prohibiting the deposition.

Further, defendants have not seriously contended, let alone provided any evidence, that the Ogles are seeking to depose Mr. George and Ms. Minear solely for purposes of harassment. Rather, the crux of defendants' position is that the status of Ms. Minear and Mr. George as in-house counsel triggers a Shelton analysis. As this Court has discussed previously, however, this fact alone is not determinative of Shelton's applicability:

> The issue is not quite that simple. As this Court explained in Williams v. Wellston City Sch. Dist., 2010 WL 4513818 (S.D. Ohio Nov. 2, 2010), the primary rationale behind Shelton's imposition of a burden on a requesting party to show why it is entitled to take a deposition - a reversal of the usual procedure which places the burden of persuasion on the party seeking protection - is to protect against the discovery of trial or litigation strategy. Consequently,
>
>> [w]hen the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying Shelton are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy, or that the purpose of the deposition is to drive a wedge between the opposing party and its current counsel.
>
> Id. at *5. See also Ellipsis, Inc. v. Color Works, Inc., 227 F.R.D. 496, 497 (W.D. Tenn. 2005)("the Shelton test should be limited to those instances where the attorney to be deposed is either trial/litigation counsel or the subject matter of the deposition may elicit litigation strategy"); Cheesemore v. Alliance Holdings, Inc., 2011 WL 4458782 (N.D. Ohio Sept. 23 2011)(declining to apply Shelton to proposed deposition of opposing counsel to the extent that the questioning related to their prior role as transactional counsel and not their current role as litigation counsel). Of course, it also makes sense that the burden of

-10-

> producing evidence to show what role counsel actually plays in a case - assuming that the answer to this question is not obvious, as it would be for outside litigation counsel and perhaps for in-house counsel who have entered an appearance in the case - should be on the party asserting that Shelton applies, since that party is in the best position to know exactly what counsel's role was or is.

Libertarian Party v. Husted, -- F.Supp.2d --, 2014 WL 3509749, *10 (S.D. Ohio July 14, 2014).

Beyond relying on Ms. Minear's and Mr. George's in-house counsel status, defendants have presented no evidence detailing the extent of their involvement in this case. At most, they have stated in passing that some facet of the state court litigation in which Ms. Minear is involved remains pending and they refer to these parties without explanation, in a phrase buried on page 10 of their supporting memorandum, as "attorney-advisors to other defendants." Further, the Ogles have not expressed any intent to question these defendants about those matters, but rather to depose them on issues relating to knowledge of wood products, construction activities, and damages. Given this factual record, there is no basis for applying Shelton, and the question then becomes whether the defendants have advanced other persuasive reasons in support of their position that Ms. Minear and Mr. George should not be deposed.

### B. Undue Harm, Burden, and Expense

The defendants' secondary argument is that allowing the depositions of Mr. George and Ms. Minear to go forward would cause undue harm, burden and expense justifying the entry of a protective order. In support of this position, the defendants claim that Mr. George and Ms. Minear have no relevant information relating to any remaining claims or damages. Further, they argue that their positions as in-house counsel present a significant risk of infringement on privileged information. They do not

offer these arguments in support of the complete preclusion of the depositions, however, but propose the entry of an interim protective order designed to minimize what they perceive as the inherent risks associated with the depositions.

Specifically, the defendants propose that the Court require the Ogles to complete the depositions of other, non-attorney defendants and corporate representatives.  When those depositions are completed, they propose that the Ogles be required to move the Court for leave to issue deposition notices specifying "(1) the relevant information that is uniquely in the possession of the proposed attorney deponents; (2) why that information is necessary to Plaintiffs' affirmative case; and (3) describing how that questioning can be pursued without revealing attorney-client privileged information or protected litigation strategies."

One problem with the defendants' proposal is that they are attempting to require the Ogles to describe, in advance, the subjects to be covered, when a party ordinarily has no such obligation.  The only time that, by Rule, a party must specify the subjects about which it wishes to depose a witness is when noticing a Rule 30(b)(6) deposition.  Other deposition notices need not contain that information.  See Fed.R.Civ.P. 30(b)(1), (3); see also Bennett v. The Westover, Inc., 27 F.Supp. 10, 11 (S.D.N.Y. 1938)("The Federal Rules of Civil Procedure do not require that the 'notice to take deposition' state the matters upon which the examination is sought").

As this Court has previously explained:

> The noticing party may be required to explain its purposes in taking a deposition, however, if the facts suggest that those purposes are improper.  That concept underlies the "apex deposition" rule applied in some jurisdictions, see Salter v. Upjohn, supra, where the identity of the deponent itself indicates an intent to harass rather than an intent to engage in legitimate discovery.  It also explains the restriction on a second deposition of the same witness; once the

-12-

>   deposing party has had a full opportunity to question a
>   witness, doing that for a second time is presumptively
>   duplicative and it is appropriate to ask the requesting
>   party to explain what else might be asked that has not
>   already been covered adequately in the first
>   proceeding. Cf. Powell v. United Parcel Service, Inc.,
>   2011 WL 124600, * (S.D. Ind. Jan. 13, 2011)(in order to
>   grant leave to take a second deposition of the same
>   witness, the Court's order must be "consistent with
>   Rule 26(b)(2), which provides that discovery must be
>   limited when it is unreasonably duplicative...").
>   Otherwise, however, the courts should be reluctant to
>   permit a party who wishes not to be deposed to use a
>   procedural device such as a motion for a protective
>   order to force the requesting party to specify, in
>   advance, the subject of the deposition as a
>   precondition to proceeding.

Libertarian Party, 2014 WL 3456835, at *4.

The more obvious problem with the defendants' position is that the Ogles already have disclosed in advance the subject matter of the proposed depositions. With respect to Mr. George, defendants' position, aside from arguing that he has no relevant information to provide, is that the majority of the identified topics concern matters about regulatory submissions to FERC or state agencies - issues dismissed from this case. With respect to Ms. Minear, Columbia's position is focused less on the issue of relevance and more on a concern that privileged communications and mental impressions may be revealed.

The Court notes that the defendants do not raise an extensive argument on the issue of relevance, either in their Shelton analyis or independently. Further, neither Mr. George nor Ms. Minear have submitted an affidavit swearing that they have no information relevant to the issues remaining in this case. Moreover, defendants have a heavy burden of showing that Mr. George or Ms. Minear could not be asked a single relevant question such that their depositions should be precluded in their entirety. Libertarian Party, 2014 WL 3509749, *11, citing

-13-

<u>Naftchi v. New York University Medical Center</u>, 172 F.R.D. 130, 132 (S.D.N.Y. 1997).

    Rather, to the extent defendants make an argument directed to relevance, it revolves around their interpretation of the deposition topics outlined by the Ogles.  However, defendants raise their objections in general terms and do not raise objections to identified topics in any specific detail.  The Court is not convinced that the outlined topics relate to dismissed claims regarding fraudulent regulatory filings to the extent defendants contend.  Rather, some of the outlined topics appear to be intended to elicit information relating to damages arising from construction on the Ogles' property.  At the same time, however, some of the topics do appear to go beyond the issue of damages to the Ogles' property as a result of Columbia's actions on the property prior to November 5, 2009.  For example, as defendants point out, several of the deposition topics involve inquiries regarding the construction activities on the properties of other landowners.  These deposition topics are 5, 6, 7, and 10.  Further, topics 4 and 8 appear to relate to documents filed with FERC or other agencies.

    This issue is easily addressed by the Court's granting of a more limited protective order designed to forbid inquiry into these matters as contemplated by Rule 26(c)(1)(D) rather than precluding the depositions of Ms. Minear and Mr. George outright.  Consequently, the Court will grant the defendants' motion for a protective order to the limited extent that questions relating to topics 4, 5, 6, 7, 8, and 10 will not be allowed.

    In reaching this conclusion, the Court is mindful of the concerns regarding privileged information and fully recognizes the potential that the pro se plaintiffs' questioning of these defendants, even within the limitations established here, may cross into areas where the attorney-client or work product

-14-

privileges might apply.  This order is not intended to either suggest that these defendants can be questioned without proper regard for these privileges or that defendants may not properly invoke them if a question calls for the disclosure of privileged information.  This order merely permits plaintiffs to convene the depositions of these defendants on the topics identified as Nos. 1, 2, 3, and 9.  All of the other rules relating to discovery and depositions still apply.

## IV. Conclusion

For the reasons set forth above, the Ogles' motion to compel discovery and to produce defendants for deposition (Doc. 131) is denied in part and granted in part as set forth above.  The motion for a protective order (Doc. 132) is denied in part and granted in part as set forth above.  The depositions shall be convened within 30 days of the date of this order.

## V. Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp

                                        United States Magistrate Judge